# Hulton's Appeal.

1. In construing a will, in order to arrive at the intention of the testator, regard must be had to his circumstances when he executed it; facts which occurred after his death, and which he evidently did not anticipate, must be disregarded.

2. A testator, in his will, provided as follows: " I give my daughter Martha one hundred feet square, commencing, . . . In consideration of which, my daughter Martha must pay to James' heirs $500. To my daughter Martha I give my dwelling-house, and everything that is in it, except what is hereafter mentioned. Also, . . . all the remainder of my ground except what is hereinafter mentioned; that is, a lot bounded and described as follows; . . . To my son Francis I give my clock, bureau and the painting of a horse; to my daughter Alice I give my piano; the rest of my personal property, both in and out of the house, I give to my daughter Martha. My daughter Martha must pay all my debts and funeral expenses, but my funeral expenses must not cost more than $100." Several years later the testator made a codicil to his will, which, after stating that he had bought back a certain lot, which he had previously sold, continued: "It is my will that my daughter Martha, my sole executrix, sell the above lot, and I hereby authorize and empower her to do so, and make title therefor, and for such price as she sees fit and proper. The money she may receive for said lot shall first go to pay all my debts and funeral expenses, and what money is left from it shall go to all my heirs, except my daughter Elizabeth Bright, . . . I will the share that

[Hulton's Appeal.]

would go to her shall go exclusively to my daughter Martha, in addition
to what I have hereinbefore, and herein will to Martha. The residue of
the above mentioned lot shall go to James' heirs. The $500, ordered in
my will to be paid by Martha,' she must not pay it." *Held*,

(1) That by the codicil, the testator intended to charge upon the lot
therein described, the whole of his debts and funeral expenses; and to
relieve his daughter Martha from the charge to pay the same, imposed
upon her under the original will.

(2) That although said lot did not sell for enough to pay such debts
and expenses, resort would not be had to the original charge in the will
against Martha for the excess; but that she might, as executrix, pay such
excess from the funds of the estate in her hands, and claim credit there-
for in her account.

October 23d 1883. Before MERCUR, C. J., GORDON, PAX-
SON, TRUNKEY and STERRETT, JJ. GREEN and CLARK, JJ.,
absent.

APPEAL from the Orphans' Court of *Allegheny county :* Of
October Term 1883, No. 28.

Appeal of Martha Hulton, executrix of Jonathan Hulton,
deceased, from a decree of said court, surcharging her, in her
account as executrix, with certain sums used by her out of the
estate of the decedent for the payment of his debts.

At the audit of her account as executrix the following facts
appeared : Jonathan Hulton died, testate, August 10th 1876.
In his will, dated August 15th 1873, he made, inter alia, the
following provisions : " To the heirs of my son James, I give
. . . . the lot I sold to my grandson Jonathan, the money that
is coming on the lot I sold to my grandson Jonathan to be
paid to the heirs of my son James, share and share alike when
his youngest daughter comes of age. I give my daughter
Martha one hundred feet square, including the spring, com-
mencing on the aforesaid alley one hundred feet to Watson's
line, thence along Watson's line one hundred feet, thence down
James' line one hundred feet, thence across James' line one
hundred feet to the place of beginning. In consideration of
which my daughter Martha must pay to James' heirs five
hundred dollars, one hundred to each, when Mary comes of age.
. . . . To my daughter Martha I give my dwelling-house, and
everything that is in it except what is hereinafter mentioned.
Also I give to my daughter Martha all the remainder of my
ground except what is hereafter mentioned : that is, a lot
bounded and described as follows : Beginning at the corner of
Railroad avenue and 'I' street ; thence along Railroad avenue
one hundred feet; thence along Martha's line one hundred and
fifty feet ; thence along Martha's line one hundred feet to 'I'
street; thence down 'I' street one hundred and fifty feet to
the place of beginning. . . . To my son Francis I give my
clock, bureau and the painting of a horse; to my daughter

Alice, I give my piano ; the rest of my personal property, both in and out of the house, I give to my daughter Martha.   My daughter Martha must pay all my debts and my funeral expenses, but my funeral expenses must not cost more than one hundred dollars, on any account whatever.

"The note I hold against B. F. Reynolds of one thousand dollars, after paying B. F. Reynolds. what I owe him, must be equally divided among my heirs."

By a codicil dated January 11th 1876 the testator provided as follows : "Having bought back the lot I sold to my grandson Jonathan fronting on Railroad street, it is my will that so much of it as is contained in the written description, to wit : Beginning in the corner of a twenty feet alley and Railroad street; thence along Railroad street one hundred feet ; thence through the same lot one hundred and seventy feet, or until it strikes the line between De Camp and Dr. Reynolds ; thence along said line one hundred feet ; thence down the twenty feet alley to the place of beginning one hundred and eighty-four feet.   It is my will that my daughter Martha, my sole executrix, sell the above lot, and I hereby authorize and empower her to do so and make title therefor, and for such price as she sees fit and proper.   The money that she may receive for said lot shall first go to pay all my debts and funeral expenses, and what money is left from it shall go to all my heirs except my daughter, Elizabeth Bright.   She is to have no share of my estate.   I will the share that would go to her shall go exclusively to my daughter Martha, in addition to what I have heretofore and herein will to Martha.   The residue of the above mentioned lot shall go to James' heirs.

"The five hundred dollars ordered in my will to be paid by Martha, she must not pay it. . . . The money coming from the lot sold to Mrs. Dr. Reynolds must be equally divided between all my heirs, except Mrs. Elizabeth Bright, and her share shall go to Martha.

"I hereby constitute my daughter Martha my sole executrix of this my will and this codicil."

In accordance with the terms of the codicil the executrix sold the lot therein mentioned, for $800.   It subsequently appeared that this sum was not enough to pay all the debts of the testator ; and the executrix accordingly paid the excess thereof, and claimed credits for such disbursements in her account.

To the allowance of these credits, Francis Hulton and Alice Reynolds filed exceptions, which were sustained by the court, OVER, J., delivering the opinion, which was, inter alia, as follows :

"It is evident it was the intention of the testator to provide for the payment of all his debts out of a portion of his

estate designated by him. In the will, the burden of their payment was placed entirely upon that part of his estate devised and bequeathed to his daughter Martha. In the codicil, the testator directs that a lot of ground be sold and the proceeds of the sale be applied to their payment. It is clear that he believed that the amount realized from the sale of this lot would be more than sufficient to pay them.

Is the fact that this was his belief, then sufficient to lead to the conclusion, that it was his intention that if there was a deficiency the burden of its payment should be borne by all of his legatees and devisees? It might justify such an inference. But this inference certainly cannot prevail against the manifest intention of the testator as expressed in the will and codicil, that his debts were to be paid out of the portion of his estate designated by him. It would seem then that it was the intention of the testator that his daughter Martha should pay the excess of the debts over the amount realized from the sale of the lot. She has acted as executrix of the will and accepted the devises and bequests made to her therein. In the absence of evidence as to the value of these, the presumption is, they were sufficient to pay this excess of debts, and as she has paid it out of moneys specifically bequeathed she must be surcharged with the amount so paid.''

The court accordingly entered a decree directing a distribution in accordance with this opinion; surcharging the executrix with the debts of the testator in excess of the $800 derived from the sale of said lot. Whereupon the executrix took this appeal assigning for error the decree of the court.

*G. W. De Camp* (with whom were *Hughey & Bennett*), for appellant.

*John C. McCombs*, for appellees.

Mr. Justice GORDON delivered the opinion of the court, November 5th 1883.

The will of Jonathan Hulton is not as clear and unambiguous as it might have been, nevertheless by taking it and the codicil together, we think it is possible to discover with a reasonable degree of certainty, his testamentary intention. Martha, his unmarried daughter, seems to have been the principal object of his care and bounty. To her he gives first, a lot of ground one hundred feet square, and in consideration thereof requires her to pay one hundred dollars each to the five children of James Hulton. Next, he devises to her his dwelling-house and every thing in it, except such articles as are after-

wards bequeathed to others of his children. Then comes the following provision: "I give to my daughter Martha all the remainder of my ground except what is hereafter mentioned; that is a lot bounded and described as follows: beginning at the corner of Railroad avenue and 'I' street; thence along Railroad avenue one hundred feet; thence along Martha's line one hundred and fifty feet; thence along Martha's line one hundred feet to 'I' street; thence down 'I' street one hundred and fifty feet to the place of beginning."

An inspection of the above quotation will show that a general residuary devise of the testator's realty is not here intended, but rather a specific devise of what should remain of a definite lot of ground, after that particularly described was separated from it. Then again, we have the following item, the one which gives rise to the principal point of contention. "To my son Francis I give my clock, bureau, and the painting of a horse; to my daughter Alice I give my piano; the rest of my personal property, both in and out of the house, I give to my daughter Martha. My daughter Martha must pay all my debts and funeral expenses, but my funeral expenses must not cost more than one hundred dollars, on any account whatever." Neither can we regard this as technically a residuary bequest of personalty, for the words, "the rest of my personal property, both in and out of the house," can be taken to refer to nothing but such chattels as might be in or about his dwelling. This bequest, therefore, is quite as specific as if he had said, "my household chattels, reserving my clock, bureau and piano, I give to my daughter Martha." We have nothing then, in the way of a residuary devise or bequest on which to raise a doubt, or beget hesitancy, as to the testator's intention, as expressed in the codicil, concerning the ultimate disposition of his debts and funeral expenses. But whilst that part of the will just quoted, clearly charges Martha with the payment of those debts and expenses, when we come to the codicil we find, as to this charge, as well as to several other particulars contained in the original testament, an expression of intention differing radically from that first entertained by the testator.

He relieves Martha from the payment of the five hundred dollars bequeathed to the children of James Hulton; he substitutes her to the place of Mrs. Bright in the bequest of the money coming from the sale to Mrs. Dr. Reynolds; he provides specially for the payment of his debts and funeral expenses, and, as we think, thus relieves Martha from that charge also.

As this part of the codicil is the main subject of controversy in this appeal, we give it in full: "Having bought back the lot I sold to my grandson Jonathan fronting on Railroad

[Hulton's Appeal.] .

street, it is my will that so much of it as is contained in the written description, to wit: beginning in the corner of a twenty feet alley and Railroad street; thence along Railroad street one hundred feet; thence through the same lot one hundred and seventy feet, or until it strikes the line between De Camp and Dr. Reynolds; thence along said line one hundred feet; thence down the twenty feet alley to the place of beginning one hundred and eighty-four feet. It is my will that my daughter Martha, my sole executrix, sell the above lot, and I hereby authorize and empower her to do so and make title therefor, and for such price as she sees fit and proper. The money that she may receive for said lot shall first go to pay all my debts and funeral expenses, and what money is left from it shall go to all my heirs except my daughter, Elizabeth Bright. She is to have no share of my estate. I will the share that would go to her shall go exclusively to my daughter Martha. The residue of the above mentioned lot shall go to James' heirs."

Now if there is one thing clear in this codicil it is, that the testator intended to charge upon the land thus described, the whole of his debts and funeral expenses, and that he thus intended to relieve the appellant of the charge previously imposed upon her. That this is a true solution of the testator's intention is not denied by the appellees, but it is said, that, as the matter turned out, this property did not sell for enough to pay the debts, and therefore we must resort to the original charge in the will for the balance. But this cannot be done arbitrarily. It does not follow that because she was once charged, the subsequent devise is to operate merely to her relief pro tanto. The question is, what was the testator's intention; what were his thoughts when he penned this codicil? What he thought is patent. He had no doubt but that a fund sufficient, and more than sufficient, to pay the debts and expenses could be raised from the sale of the land devoted to that purpose. But not more certain is it that he thought and believed he had provided for these necessary charges upon his estate, than that he intended to relieve Martha of them, and that not in part, but in whole; altogether, the question is not what his intention would have been, had he either known or thought differently, but what was his intention in view of his knowledge and understanding when he made his codicil. And non constat had he known just how the matter would have turned out, that he would not have charged the deficit upon his general estate rather than upon Martha.

Here, however, we get into the region of doubt and uncertainty, but when we assume the position and ideas of Jonathan Hulton when he executed the instrument before us, and disre-

[Ihmsen *v.* Lathrop.]

gard, as we are bound to do, the facts and circumstances occurring after his death, and which he evidently did not anticipate, his intention to relieve his daughter of that which he had formerly imposed upon her, becomes so clear that hesitation concerning it is impossible.

The decree of the court below is now reversed at the costs of the appellees, and it is ordered that the appellant's account be restored and confirmed.