## Wadsworth's Estate.

*Wills—Construction—Devise—Charge on land—Executors and administrators.*

Where a testator leaving to survive him a wife and several children including two imbecile daughters devises the larger part of his land to his wife for life and directs that at her death "the family is to live on the farm," and the two imbecile daughters are to have a living off of it "as long as they both shall live, and at the death of both of them the farm may be sold and the money equally divided amongst the heirs," the executrix of the estate, one of the daughters, is not authorized, after the death of the widow, to make expenditures in support of her imbecile sisters out of the general funds of the estate.

In such a case the imbecile daughters were to have a living out of the farm, and if such a living should be regarded as a charge

on the land, they had a remedy given by statute which they could invoke.

Argued May 8, 1916.   Appeal, No. 75, April T., 1916, by Franc Ketterer, from decree of O. C. Butler Co., Sept. T., 1913, No. 40, sustaining exceptions to auditor's report in Estate of Dawson Wadsworth, deceased.   Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ.   Reversed.

Exceptions to report of Auditor Andrew G. Williams, Esq.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in sustaining exceptions to auditor's report.

*T. C. Campbell,* with him *A. M. Christley, W. Z. Murrin* and *John Murrin,* for appellant.—In this will of Dawson Wadsworth there is not one word which would indicate that the testator conferred upon his executors as executors any authority whatever over his real estate at any time.   Certainly there was nothing to show such authority during the lifetime of his wife or his daughters, Sarah Jane and Margaret.   And even after their death the power of sale was not given to the executors. There was no direction to sell.   The will does nothing more than permit a sale, that is by the heirs who were finally to take the land:   Clark v. Riddle, 11 S. & R. 311; Kirk v. Carr, 54 Pa. 285; Krug's Est., 9 Dist. 239; Walker v. Gibson, 164 Pa. 512; Mellon's App., 46 Pa. 165; Bennett's Est., 148 Pa. 139; Sloan's App., 168 Pa. 422.

By his acceptance of the devise, the devisee assumed a personal liability for the support of his sister.   Both he and the land were bound:   Walter's Est., 197 Pa. 555; Ripple v. Ripple, 1 Rawle, 386.

*H. H. Goucher,* for appellee.—The bequest to the ulti-
mate legatees of which the appellant is one was "money"
the proceeds of a sale of the land contingent upon the
death of both Sarah Jane and Margaret, for whose sup-
port and maintenance the land was charged by the tes-
tator, and to which the interests of the residuary legatees
are subject. The interest of Mrs. Franc Ketterer being
but a one-eighth, after the payment of the debts and ex-
penses of administration and the expense of the support
and maintenance of these two charges: Mustin's Est.,
188 Pa. 544; Bentley's Est., 196 Pa. 497; McCurdy's
App., 5 W. & S. 397; Donnelly's Est., 246 Pa. 308.

OPINION BY TREXLER, J., October 9, 1916:

When Dawson Wadsworth executed his will and at the
time of his death his immediate family consisted of his
wife and daughters, Margaret, Sarah Jane and Henri-
etta, the last named being the executrix and accountant.
The estate consisted of a few articles of personal prop-
erty and about 100 acres of land of which he devised
about 30 acres to his son, Dawson, and four acres to his
daughter, Henrietta, and after making some bequests of
personal property, his will provides, "the family to all
live together in peace and harmony. All my real estate,
personal and mixed (not heretofore mentioned) I be-
queath to my wife during the term of her natural life,
and at her death the family is to live on the farm, Mar-
garet and Sarah Jane is to have a living of (off) the farm
as long as they both shall live and at the death of both
of them the farm may be sold and the money equally di-
vided amongst the heirs (except my son Dawson) who
takes his in land; John, Annie, Wm. and Henrietta, or
their heirs, in equal shares."

After the death the widow had a portion of the land
including the mansion house set apart to her under her
exemption and this portion after her death by her will
fell to her daughter, Henrietta, who continued to live
and maintain a home up to the present time and there she,

provided for and supported Margaret and Sarah Jane, her sisters, who were weak minded. She filed a partial account as executrix by which she claimed credit by way of reimbursements for moneys expended and services rendered in the support and maintenance of Margaret and Sarah Jane at the rate of $7 per week for both, and for taxes assessed on the farm and paid by her. The learned auditor came to the conclusion that these expenditures were not proper credits, but upon exceptions filed, the Orphans' Court reversed him and confirmed the account. The court took the view that the executrix had the title to the real estate virtute officii for the purpose of sale and distribution upon the death of Margaret and Sarah Jane and subject to their support and maintenance as long as both lived, that the language of the will created a charge on the land for the maintenance of Margaret and Sarah Jane and that the expenditures made by the executrix in support of the above named were made in discharge of the burdens and obligations imposed upon her as acting executrix of testator's will.

It is evident that testator did not contemplate a sale of the real estate until after the death of his two daughters. No duty of support is placed on any one. The living for them is to come out of the farm. Whether or not the words of the will are to be regarded as making a charge on the land or not, we find nothing in the will that would authorize the executrix to make expenditures for the support of her sisters and claim them as credits in the account stated by her. When she assumed these duties, however commendable her act might be, she was a mere volunteer. A charge placed on the land was not a debt of the estate. If we were to allow the credits claimed she could not ask the court to sell the land for their payment. It was held in Torrance v. Torrance, 53 Pa. 505, that an executor has no authority to apply for a sale of lands to pay legacies charged thereon by will. An executor as such has nothing to do with legacies expressly charged on land. Such legacies can be enforced only

in the Orphans' Court by petition by the legatee against the owners charged, with notice to the executors, or such others as may have an interest: Conard's App., 33 Pa. 47; Weller's Est., 247 Pa. 196. Section 59 of the Act of Feb. 24, 1834, P. L. 73, provides the method of enforcing the payment of legacies charged upon lands. The evident intention of the testator in the case before us was that the family should remain on the farm and that the imbecile daughters should have a living out of the products of the farm. It did not occur to testator that the widow would receive the mansion house and part of the land under her exemption and that his will in regard to his daughters would to a certain extent be frustrated by her act. We cannot put a forced construction on this will in order to remedy the evils caused by testator's misunderstanding as to the future condition of his estate. The facts which occurred after his death and which he did not anticipate must be disregarded: Hulton's App., 104 Pa. 359. There is nothing in the will giving the executrix the management of the real estate and if there were powers of sale given, and as to this there is some doubt, such powers were to be exercised after the death of the two daughters.

As stated before we think it is plain, upon a reading of the will, that no duties were imposed upon the executrix to maintain her sisters, and if the living they were to obtain from the farm failed, and if we regard it as charged on the land, there is a remedy given by statute which they could invoke.

The decree of the lower court is reversed and the account as restated by the auditor is confirmed.