## Minns Estate

*James K. Nevling* and *Nevling & Davis*, for petitioner.

*Carl A. Belin*, for respondent.

PENTZ, P. J., August 11, 1960.—George Minns, Sr., the above-named decedent, acquired by deed dated September 9, 1921, as recorded in deed book 252, at page 443, in the office for recording of deeds in Clearfield County, 20 acres of land, described by metes and bounds, situate in Sandy Township, Clearfield County. This deed contained a reservation as follows:

"Reserving, however, all of the coal, coal oil, and other minerals and mineral products that may be in or under said land, together with the usual mining rights, as provided in previous deed."

Decedent then, on September 18, 1922, executed his

last will and testament, and died a little over a month later, namely, October 24, 1922. The will was probated October 31, 1922.

With exception of the declaration of intent to make a will, and the execution and attestation clauses, the entire will reads as follows:

"As soon as is convenient after my decease, I direct that my Executor shall pay all of my just debts out of my personal property on hand at my decease.

"The Greenwood Cemetery in Sandy Township, I devise as follows:—My son George shall attend to keeping it in proper condition and pay such expense from money received from sale of the lots. The balance of the money so received he shall divide and pay out in equal shares once a year, one part to himself, one part to Martha Case, one part to Catherine Trude, and one part to Alice Whipple. George Minns as my Executor to make and deliver deeds to cemetery lots, without any order of Court. Any money that may be left after paying my debts and administering my estate I bequeath equally to Sarah Guntrum, William Minns, John T. Minns, Abbie Johnson, Robert Minns, Harry Minns, my children." . . .

The deed aforesaid vested in George Minns, Sr., the natural gas in or under the 20 acre tract; the reservation above quoted not being sufficient to reserve the natural gas or oil: Highland v. Commonwealth, 400 Pa. 261. . . .

This question hinges then, upon the will of George Minns, Sr. Did the portion of the will in which he says "The Greenwood Cemetery in Sandy Township, I devise as follows:—", and directs his son George to keep in condition, pay the expenses, sell burial lots and divide the proceed from said burial lots to and among the three daughters named and himself, constitute a devise in fee of the cemetery property to the four persons named, subject to its use as a cemetery? On the

other hand, did this will, as contended by the six legatees of "Any money that may be left after paying my debts," by virtue of this wording, receive, or have devised to them, the real estate in fee? In both instances the gas would pass to the devisees of the fee.
. . .

In the instant case, although the gas was undoubtedly in the ground at the time George Minns, Sr., made his will, he did not know it was there, nor did anyone know it was there, until its discovery 37 years later. Thus, this will must be construed without considering the gas which testator did not know, and could not have had in mind, when he made his will: Hulton's Appeal, 104 Pa. 359. In construing the will, the circumstances testator knew when he executed the will, must only be considered; not events which occurred after his death and which he did not anticipate: Wadsworth's Estate, 64 Pa. Superior Ct. 604, 608.

The circumstances existing at the time the will was made indicate, insofar as the record is concerned, that testator owned only 20 acres of land, and no other real estate. From the petition of the DuBois-Deposit National Bank to appoint a successor trustee, we learn decedent had sold some burial plots on this 20 acre tract. It is, therefore, clearly within the province of the court, in construing this will, to say that when testator says "the Greenwood Cemetery in Sandy Township," he refers to this 20 acre tract.

This land was appraised at $2,000. His personal property grossed $1,804, and upon correction in the final account, was reduced to $1,786.84. Thus the value of the real estate exceeded the value of the personal property by $213.16.

One group is given the proceeds from the sale of burial plots, after payment of expenses and maintenance of Greenwood Cemetery. The other group is given the proceeds of the money, after payment of

the debts, funeral expenses and last illness of decedent. In absence of any evidence of the sale of burial lots by George Minns, Jr., and any accounting of any division of proceeds therefrom, the conclusion that testator intended the fee in the cemetery to pass, is not warranted by that fact alone. In the account of the personal property are two notes payable to decedent, by his son George Minns, Jr., and his son John T. Minns, in addition to the bank account, and the United States Bonds and War Savings Stamps.

From the way the estate of decedent is distributed (and it is obvious that he well know the extent and value of his estate) it is a fair conclusion that he intended to provide for the one son and three daughters with the proceeds from the cemetery and to provide for the other six children with the distribution of his personal property.

The representatives of the grandchildren, children of the deceased six children named, take the position that by virtue of the words "any money that may be left after paying my debts, etc," includes the real estate. This is not well taken. In Mitchell v. C. Clippinger's Heirs, 392 Pa. 40, page 44, the rule is stated as follows:

"This Court has recognized the fact that the word 'money' when used in a will may be construed in the broad sense of wealth or property, including real estate, where the context of the will and the circumstances surrounding its execution require that it be so interpreted to give effect to the testator's intention. Talbot v. Anderson, 292 Pa. 454, 141 A. 256; Ostrom v. Datz, 274 Pa. 375, 118 A. 313; Jacobs' Estate, 140 Pa. 268, 21 A. 318. The above principle was recently reaffirmed in Conlin Estate, 388 Pa. 483, 131 A. 2d 117, although the specific holding was that the will and surrounding circumstances did not there disclose the requisite intention. In Reagan Estate, 77 D. & C.

529, the words 'Thirty-five Thousand ($35,000.00) Dollars of my interest in the Exchange Hotel' were held to have constituted a devise of an interest in real estate. From a consideration of the above cases it is obvious that (1) people do refer to their interest in real estate in terms of money or dollars; and (2) such usage is sufficient to pass title to real estate when an intention to do so can be ascertained from the will itself, and the circumstances surrounding its execution."

In Conlin Estate, 388 Pa. 483, above cited, Mr. Justice Bell points out that using the word "money" in its ordinary and usual meaning, coupled with the circumstances surrounding testatrix, the real estate, which comprised approximately one-half of the estate, did not pass. The decisions construing money as including real estate, are reviewed in that decision. This analysis indicates that where money has been construed to include real estate, there were such words, circumstances and conditions in the will, and in the estate itself, which indicated testator so intended.

Therefore, construing the surrounding circumstances of George Minns, Sr., at the time he made his will and the character of his estate, approximately half real estate and half money and the obvious intention to confine the two groups of his children to the two different categories in his estate, he did not use the word "money" as inclusive of the real estate.

The devise of the Greenwood Cemetery, did not devise the land, or the cemetery, to any person. The Greenwood Cemetery had been started by decedent during his lifetime, by the sale of burial plots. He appointed his son, George Minns, Jr., to continue selling burial plots, and divide the proceeds among the three daughters named. There is no power given George Minns, Jr., other than to sell burial plots and make deeds therefor; whether in fee, or otherwise, does not

appear; nor is it particularly necessary to determine what type of deed George Minns, Jr., made for burial plots. No provision is made for continuing sale of the burial plots in Greenwood Cemetery after the death of George Minns, Jr., except what might be accomplished under the Act of June 7, 1917, P. L. 388, sec. 2(a), as amended finally August 5, 1941, P. L. 824, sec. 1, 20 PS §1563(a), commonly known as the Revised Price Act. The continuance of Greenwood Cemetery until the entire 20 acres are sold for burial plots thus being assured, the intent of testator can thus be accomplished. The fact that testator had sold burial plots during his lifetime, and that he disposed of the proceeds of the sale of burial plots after his death to four of his children, indicates he regarded the cemetery as a source of income and not a charitable or public benefice, within the category of charitable uses and purposes for the public, or otherwise. To him, the cemetery was a profit-making venture.

The position of George Minns, Jr., therefore, given authority to make deeds for burial plots and to dispose of the profits or proceeds of the sale of such plots, makes George Minns, Jr., a trustee, in effect.

In Restatement of Trusts 2d §88, it is stated as follows:

"(1) Unless a different intention is manifested, the trustee of an interest in land takes such an estate, and only such an estate, as is necessary to enable him to perform the trust by the exercise of such powers as are incident to ownership of the estate."

In comment d thereunder, we find:

"d. *Extent of estate*. If the trustee takes an estate in land, the extent of the estate which he takes depends upon the manifestation of intention of the transferor. In the absence of evidence of a contrary intention of the transferor, the trustee takes an estate of such extent that he may perform the trust by exercising pow-

ers which are incident to the ownership of such an estate without the necessity of resorting to powers over an estate not held by him.

"The trustee may take an estate in fee simple although the estate is limited to him without mention of his heirs; and he may take an estate less than a fee although the estate is limited to him and his heirs. If the trustee is given power to make a sale or mortgage of the fee simple or to convey a fee simple to the beneficiaries, the trustee takes an estate in fee simple in the absence of evidence of a different intention of the transferor."

George Minns, Jr., therefore, took only sufficient estate in the land to carry out the limited duties laid upon him; namely, to sell burial plots and divide the net proceeds derived therefrom. Testator, at the time of making his will, did not, unaware of the presence of the gas, understandably make any disposition thereof. He was concerned with the continuity of the cemetery, the sale of burial plots, which require, traditionally, only six feet below the surface. Natural gas, or any other mineral, in the widest interpretation of the word "mineral," are not requisite or necessary for burial plots, and consequently, no rights or duties thereunder were given George Minns, Jr., in the trust devised to him.

With the discovery of natural gas, 37 years after the making of the will and the death of testator, a condition arose which could not be said to have been overlooked or misunderstood. It is a condition which testator did not know existed, and it could not be said that he should have anticipated the occurrence of this condition.

The inevitable conclusion to be reached, is that George Minns, Sr., died intestate, insofar as the natural gas is concerned.

One of the canons of construction of wills is to avoid intestacy, if at all possible, and in the construction of a will of doubtful meaning, every intendment is to be made in favor of the heir or next of kin. . . .

[The court here referred to Nebinger's Estate, 185 Pa. 399, 404; Davis' Estate, 346 Pa. 247, 251; and Sowers' Estate, 383 Pa. 566.]

In the case at bar, the will, in its phrasing, expresses clearly the intent of testator and the disposition of his property, real or personal, as he knew it. Since the presence of the natural gas occurred many years later, the will would have to be considerably distorted to bring disposal thereof within its terms. There is no obvious or mistaken elimination of words in the will which renders it contradictory or ambiguous, the insertion of which will reconcile otherwise conflicting provisions. Nothing can be added to express the intent of testator in respect to the gas, since he had no intent concerning the gas, not knowing of its presence.

The result is that George Minns, Sr., died intestate, insofar as the natural gas in or under the 20-acre piece of land known as Greenwood Cemetery, and it passes in accordance with the Intestate Act of June 7, 1917, P. L. 429, in effect at the time of the death of George Minns, Sr.

While the powers placed in George Minns, Jr., are limited to the sale of burial plots only, and the gas belongs to all of the heirs of George Minns, Sr., the appointment of Alice Ross as trustee for the purpose of making a lease is not, probably technically, correct; expediency and imminence of loss of the natural gas rendered it mandatory to act promptly. As noted hereinbefore, there are 45 grandchildren of George Minns, Sr., involved, with probably three or four more to be added, in addition to George Minns, Jr., and the three persons named as participants in the proceeds from the cemetery. With the necessity for immediate action

182

confronting the Minns family, some person, under color of law, had to be designated with authority to make a lease. The prevailing royalty rate in this area is one-eighth of the field price. In the instant situation, and in consideration of the fact that occasionally a higher royalty rate is negotiated, a royalty of three-eighths of the field price was fixed by the court, and is being paid in to the DuBois-Deposit National Bank in escrow, for the benefit of the owners of the gas.

The rapidity with which gas is drained from under small tracts of land, such as the one we are here dealing with, would not give time to assemble the large number of heirs involved and arrive at a definite lease or sale of the gas. No doubt such could be accomplished with all the heirs present and being represented, but that could result in exhaustion of the gas to the point where a drilling operation would be economically unsound, as has happened in the development of the gas in this central area of Pennsylvania in the Oriskany sand.

For these reasons, the exceptions and objections to the appointment of Alice Ross, and the consequent vacation of the lease, will be refused.